UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
DEC 21 2012

| | | |
|---|---|---|
| THERESA KRETH, | ) | CIV 12-4213 |
| PLAINTIFF, | ) | |
| VS | ) | **COMPLAINT** |
| GRAPHIC PACKAGING INTERNATIONAL, INC., | ) | |
| | ) | |
| DEFENDANT. | | |

## JURISDICTION

(1) This is a retaliation action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.

(2) Plaintiff Theresa Kreth is an adult female resident of Hanson County, South Dakota.

(3) Graphic Packaging International, Inc. ("Graphic Packaging") is a foreign corporation operating a plant with more than 15 employees in Davison County, South Dakota.

(4) Graphic Packaging employed Kreth between February 2005 and November 2011.

(5) Kreth filed a charge of discrimination with South Dakota Division of Human Rights on April 27, 2012 and the EEOC issued Kreth a Notice of Suit Rights on September 24, 2012.

(6) This Court has jurisdiction over Plaintiff's Title VII retaliation discrimination claim pursuant to 28 U.S.C. §§ 1331 and 1343(4). Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3).

COUNT ONE: RETALIATION UNDER TITLE VII
42 USCA § 2000e-3(a)

(7) Kreth was hired at Graphic Packaging in February 2005 and was a machine operator and tender during her employment.

(8) During her employment, Kreth performed in a manner that met Graphic Packaging's expectations.

(9) Graphic Packaging has a sexual harassment policy that instructs employees to report sexually harassing behavior.

(10) Early in her employment, Kreth and another female co-worker had reported a male co-worker for sexual harassment pursuant to this policy.

(11) In the Spring of 2011, Kreth was sexually harassed by a different male co-worker whom she had been assigned to work with.

(12) Pursuant to company policy, Kreth reported the sexual harassment to her supervisor. When the sexually harassing behavior did not cease after her first report, Kreth reported the sexually harassing behavior to her supervisor a second time.

(13) After Kreth's second report of sexual harassments, she was called into a management meeting with several supervisors, including Rick Mann ("Mann") and the company Human Resources manager, Nate Van Berkum. She detailed the allegations of unwanted and inappropriate romantic and physically aggressive behavior she had been subjected to by her co-worker.

(14) Kreth's report was investigated and she was informed that her co-worker was subject to disciplinary action because of his sexually harassing behavior.

(15) When he told Kreth that her co-worker was being disciplined because of her sexual harassment report, Rick Mann told Kreth that if she told anyone about making a sexual harassment report, she would be fired. He also told Kreth that he did not want her to "come running to the office" with any further complaints about her male co-worker because Mann believed she was just trying to get the co-worker fired.

(16) Mann's comments to Kreth were designed to intimidate her from making any further sexual harassment reports.

(17) After Kreth reported sexual harassment to Mann and the Human Resources manager, Mann treated Kreth differently from the male employees under his supervision, including leaving her shorthanded, leaving her unable to take breaks, applying the leave and absence policy differently for her absences and calling her at home after her shifts.

(18) In July, 2011, Mann saw the Human Resources manager, Nate Van Berkum, in the area where Kreth worked. That morning, Mann called Kreth at home and angrily demanded to know what Van Berkum had been doing at the plant. Kreth told him that she did not know and suggested he should ask Van Berkum himself it her really wanted that information.

(19) Kreth found her working conditions more hostile and harder to take under Mann's supervision after Mann thought that she was in contact with Van Berkum.

3

(20) On October 20, 2011, Kreth learned from a third party that a male co-worker had been making sexual remarks to another co-worker while they were at the plant about getting into Kreth's pants and other sexually oriented remarks about her.

(21) The co-worker's remarks were unwanted, sexually oriented and tended to defame Kreth's character and where therefore in violation of the Graphic Packaging sexual harassment policy.

(22) Kreth was afraid to report the incident because of Mann's remarks about getting fired if she came to the office with another sexual harassment report.

(23) The co-worker who heard the offensive sexual remarks about Kreth stated that he did not want to report the comments because he did not want to lose his job for making the report.

(24) On October 30, 2011, Kreth's boyfriend, who does not work at the plant, called Rick Mann and reported that a male co-worker was making offensive sexual remarks about Kreth in the workplace.

(25) When Kreth reported to work on October 30, 2011, Kreth's supervisor called Kreth into a meeting and asked her questions about her boyfriend instead of the sexually harassment report. He told Kreth that she would need to meet with the Human Resources manager to discuss the sexually harassing comments that had been reported.

(26) Kreth met with Van Berkum, reported the sexually offensive comments that had been made about her and stated that she did not appreciate being talked to like that because the comments could be construed as defamatory of her character. Kreth told him that her boyfriend wanted her to report the incident to Graphic Packaging's corporate office.

4

(27) Van Berkum responded to Kreth that he had decided that the matter to be a "problem outside of work" and that "when problems outside of work cause problems inside of work, I get rid of the problem inside of work." When Kreth asked if this meant that she would be fired if she continued to complain about the sexually offensive and defamatory comments, Van Berkum replied: "If that's what it is going to take to get rid of the problem."

(28) After this remark, Kreth talked to the person who had made the offensive comments herself and told him to stop the offensive comments. He told her that no one from management had talked to him about her complaint.

(29) On November 11, 2011, Kreth had a family emergency when a family member had a heart attack and was hospitalized. She asked for and received her immediate supervisor's pre-approval and permission to leave work early and to be excused from work the next day so she could be at the hospital during her relative's surgery.

(30) The following day, Rick Mann told Kreth that she did not need to report for her next scheduled shift but that she needed to come in for a management meeting.

(31) When Kreth arrived at the management meeting on November 14, 2011, Mann told her that she was being terminated for missing too much work. He used her supervisor-approved family leave as a basis for her termination.

(32) Mann's application to Kreth's leave in this fashion was pretextual and inconsistent with how other employees who had not reported sexual harassment were treated.

(33) After this meeting, Kreth called Graphic Packaging's corporate office and reported that she had been the subject of sexually harassing remarks by a co-worker; that her report had not been investigated; and that Rick Mann treated her differently than male co-workers in the conditions of her employment after her last sexual harassment report.

(34) Graphic Packaging called Kreth back and told her that her allegations had been investigated and verified, but that Graphic Packaging was still unwilling to revoke Mann's termination of her employment.

(35) Kreth was subjected to a hostile work environment because of her gender and because she had reported sexual harassment by her co-workers.

(36) Kreth was subjected to retaliation as a result of reporting sexually harassing behavior by male co-workers.

(37) Kreth was subject to different treatment, discipline and termination as a result of her opposition to sexually harassing behavior in her workplace.

(38) The reason given for Kreth's termination was pretextual and inconsistent with how Graphic Packaging interpreted its attendance policy for employees who had not complained of discriminatory treatment.

(39) As a result of Graphic Packaging's discriminatory treatment, Kreth lost wages, benefits, incurred costs and related expenses as a result of being unemployed, and has suffered humiliation, anxiety and stress.

(40) Graphic Packaging's treatment of Kreth was willful, reckless and malicious.

WHEREFORE, Theresa Kreth prays for judgment against Graphic Packaging as follows:

    a. For a trial by jury on the merits of her claims;

    b. For compensatory damages in such amount as the evidence at trial may show;

c. For damages, including but not limited to, those damages allowed by 42 U.S.C. §2000e *et seq* and any other pertinent and applicable statute, rule or regulation, whether state or federal.

d. For punitive damages in such an amount as the evidence at trial may show;

e. For her costs and disbursements incurred herein, including prejudgment interest and reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this ____ day of December, 2012.

JOHNSON POCHOP LAW OFFICE

_____
Stephanie E. Pochop
P.O. Box 149
Gregory, SD 57533
Attorney for Plaintiff Theresa Kreth

7